UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS SCOTT ALBAUGH,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No.  1:22-cv-00424-BAM<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. 17) |

**INTRODUCTION**

Plaintiff Travis Scott Albaugh ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  The parties' briefing on the motion was submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.  (Docs. 17, 18.)[1]

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole

---

[1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Doc. 20.)

1

and based upon proper legal standards. Accordingly, this Court will deny Plaintiff's motion for summary judgment, deny his appeal of the administrative decision, and affirm the agency's determination to deny benefits.

## **FACTS AND PRIOR PROCEEDINGS**

On April 29, 2011, Plaintiff filed an application for supplemental security income (SSI) on April 29, 2011. AR 138, 205. Plaintiff alleged that he became disabled on December 17, 2010, due to pain in his knees, legs, and right ankle. AR 138, 141, 205 (noting protective filing date of April 29, 2010). On July 12, 2013, these claims were denied. AR 138-145. The Appeals Council denied review. AR 169-178.

On January 28, 2015, Plaintiff filed his second SSI application, alleging disability beginning May 1, 2014, due to ankle, knee, back, and neck problems. AR 182, 204-205. This claim was denied initially and upon reconsideration. AR 182. Plaintiff then requested a hearing, which was held on August 23, 2017. *Id.* Plaintiff's second SSI application was denied in a decision dated September 11, 2017. AR 182-191. The Appeals Council denied review. AR 198-203.

On March 12, 2019, Plaintiff protectively filed his third and current application for SSI benefits. AR 204, 335-343, 359. Plaintiff alleged that his disability began on July 14, 2018, due to sleep apnea, hypertension, pre-diabetes mellitus, back pain, neck pain, knee problems, dysphagia, shortness of breath, depression, and anxiety. AR 20-24, 204, 335–343, 359. These claims were denied initially on September 11, 2019, and upon reconsideration on December 27, 2019. AR 17, 204–219, 220–236, 245-251. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ Koren Mueller held a hearing on November 19, 2020. AR 38-70. ALJ Mueller issued an order denying benefits on the basis that Plaintiff was not disabled on March 2, 2021. AR 14-33. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-6. In their denial, the Appeals Council noted that Plaintiff submitted a medical source statement from Dr. Ivana Choudhury but found that the evidence did "not show a reasonable probability that it would change the outcome of the decision" and did not exhibit the evidence. AR 2.

///

**November 19, 2020 Hearing Testimony**

The ALJ held a telephonic hearing on November 19, 2020. AR 38-70. Plaintiff appeared with his attorney, Lars Christenson. *Id.* Susan Johnson, an impartial vocational expert, also appeared and testified. AR 65-70. Plaintiff's attorney noted that there were new neck MRIs, and the ALJ stated that he would leave the record open for thirty days for the MRIs and physical therapy records. AR 45-46. The ALJ admitted Exhibits C1A through C8A, C1B through C15B, C1D through C9D, C1E through C13E, and C1F through C17F into evidence. AR 46.

In his opening statement, Plaintiff's attorney Mr. Christenson stated that Plaintiff's allegation of changed circumstances since the previous ALJ denial was based upon a long history of degenerative disease in his lumbar spine and cervical spine that is worsening. AR 47. Mr. Christenson noted that Plaintiff had a recommendation for surgery in 2018. *Id.* Mr. Christenson also noted that Plaintiff was told by a new neurosurgeon that Plaintiff did not need surgery, but Mr. Christenson argued that the new neurosurgeon did not classify his MRI findings correctly. *Id.* Mr. Christenson argued that Plaintiff "clearly has moderate to severe stenosis" while his new neurosurgeon found no stenosis. AR 47-48. Plaintiff additionally argues that he has changed circumstances involving his mental health, which is affected by the longevity of his physical impairments. AR 48. Plaintiff's irritability and ability to get along with other people has been impacted by his physical symptoms. *Id.* Mr. Christenson further noted that Plaintiff experienced numbness, tingling, and difficulty using his arms, but had not received a nerve test following a referral. *Id.* Mr. Christenson argued that Plaintiff's symptoms, upper extremities issues have further declined since the previous ALJ denial. *Id.*

In response to questions from the ALJ, Plaintiff testified that he lived upstairs in a two-story complex. *Id.* Plaintiff stated that it was very difficult and painful for him to go up the stairs, though coming down the stairs was easier. *Id.* He testified that he recently asked property management if he could get a downstairs apartment if he received medical clearance, and was told that he could get a downstairs apartment, though Plaintiff has not yet received such clearance. AR 48-49. Plaintiff testified that he was single, lived alone, and had a therapy cat. AR 49.

Plaintiff testified that he does not have any children. *Id.* Plaintiff was 5'10" tall and weighed 243 pounds. *Id.* Plaintiff had a current driver's license and completed 12th grade. AR 49-50.

Plaintiff attempted a semester in college but quit as it became too difficult. AR 50. Plaintiff's source of income was general assistance, and he was on Section 8 for housing. *Id.* Plaintiff testified that he was not currently working. AR 51. Plaintiff testified that in the past, he did not work at businesses, but was self-employed or worked for his parents but did not file taxes on income during the 1990s. *Id.* Plaintiff testified that he did "under the table work" where he was paid and filed taxes in 2018 when he was working and when he and his mother won a jackpot at a casino. *Id.* Plaintiff has not worked for his parents since 1999 when they closed their business. AR 52. Plaintiff did odd jobs, including one involving washing windows in 2017 that he was terminated from due to his pain from bending. AR 52-53. His final job was in 2017. AR 52.

Plaintiff said that his back and neck issues kept him from working. AR 53. Plaintiff stated that his lower back pain made it "very difficult" for him to sit in the car and "difficult" to sit at home. AR 54. He testified that he cannot sit on the couch for very long, that it is painful to sweep the floor, and that it is painful for him to bend over to pick up the dustpan. *Id.* He also testified that it was difficult for him to wash dishes because his fingers would get sore, causing him dropped dishes while washing them. *Id.* Plaintiff also found it painful to sleep in bed or walk upstairs and required someone else to help him with shopping because he could not carry heavy bags or other items for a long distance. *Id.* Plaintiff testified that he took pain pills to help deal with the pain, but they were not helping with the pain and his doctor eventually stopped his pain pill prescription. AR 55. Plaintiff testified that he was going to try some new pain management and was trying to use some of the physical therapy exercises that helped with the pain. *Id.* He also testified that he took Aspirin to help manage the pain. *Id.* He said that the Aspirin and other medication and exercise "gets it to where it's manageable and bearable to where [he] can actually move." AR 55-56.

Plaintiff also stated that his right ankle had been swollen for years. AR 56. He testified that his ankle would turn sideways and cause him to fall while walking. *Id.* However, he noted that the "main issues" were his back and neck. *Id.*

In response to questioning from his attorney, Plaintiff noted that in 2018 he had problems with dropping things and having pain in his arms and fingers when a neurosurgeon recommended neck surgery. AR 57. Plaintiff testified that these problems had not improved since that time. *Id.* Plaintiff

further noted that he had a conversation with a neurosurgeon at Kaweah Delta who told Plaintiff that he recommended a different course of treatment after looking at Plaintiff's MRIs.  AR 57-58.  Plaintiff testified that the Kaweah Delta neurosurgeon told him that he did not recommend surgery because Plaintiff could get more usage out of his neck and back based upon his age.  AR 58.

Plaintiff testified that his back and neck pain were distracting and demanded his attention "24/7." AR 58-59.  He said that he experienced pain while sitting in a vehicle and while sleeping, causing him to toss and turn to try to relieve the pain.  AR 59.  He further testified that he could not sit, stand, or walk for long periods of time.  *Id.*  He stated that he could sit on the couch "a couple minutes before the pain's real…" and would need to switch positions by laying on the floor, moving back to the couch, and then sitting in a recliner to slightly relieve the pain.  *Id.*  He testified that he adjusted his position every 10-15 minutes on a good day.  AR 60.  He said he also attempted to lay in bed to relieve the pain and felt pain when he bent down to pet his cat or put his shoes on.  *Id.*  Plaintiff testified that he could only walk a block or two before needing to stop due to pain.  AR 61.  He also testified that he would get out of breath going up the stairs.  *Id.*

Plaintiff testified that he had sensations going up and down his arms and hands "most of the time" but not "all the time."  AR 62.  When asked how the pain and tingling affects his ability to use his arms and hands, he said that other than washing and dropping the dishes, he did not "even know it's happening." *Id.*  He said that the doctors "don't know what's wrong with" the ringing in his ears, but suggested it was an infection or vertigo.  *Id.*  Plaintiff stated that he can still sweep in his small apartment.  *Id.*  He also stated that the effect of the sensations on his functions is "minimal," but his back pain causes it to be "real hard to do things like pick up things."  *Id.*  Plaintiff stated that he could use a pen, but his fingers would get sore if he wrote for more than 3-5 minutes.  AR 63.  Plaintiff additionally noted that he is unsure if he has arthritis.  AR 63.

In response to questioning from his attorney, Plaintiff agreed that he suffered from depression and anger problems that caused him to lose friends and to get argumentative with other people.  AR 63-64.  Plaintiff has snapped at people he doesn't know in public.  AR 64.  Plaintiff said that he gets irritable and upset and was diagnosed with major depression and anxiety.  *Id.*  Plaintiff stated that he was taking pills for his mental health issues but told his doctor that the medication is not helping him

1  or working effectively with his issues. *Id.* He also testified that he had been referred to a behavioral
2  therapist. *Id.*

3   Following Plaintiff's testimony, the ALJ elicited testimony from VE Susan Johnson. AR 65-
4  70. The ALJ began by noting that Plaintiff did not have prior relevant work experience, so began to
5  ask hypotheticals. AR 66. For the hypotheticals, the ALJ asked the VE to consider an individual with
6  the same age, education, and past work experience as Plaintiff. *Id.* The ALJ also asked the VE to
7  assume that the individual could work at a light exertional level as defined in the Regulations with the
8  limitations that the individual can frequently climb ramps and stairs; can never climb ladders, ropes, or
9  scaffolds; can frequently balance; can frequently stoop, kneel, crouch, and crawl. AR 66-67. The VE
10 stated that there would be jobs available in the national economy. AR 67. The VE stated that
11 potential jobs included: Furniture Rental Clerk (DOT 295.357-018; light; SVP 2; approximately
12 58,289 jobs); Bench Assembler (DOT 699.685-026; light; SVP 2; approximately 571,000 jobs); and
13 Routing Clerk (DOT 222.687-022; light; SVP 2; 97,733 jobs). *Id.*

14  For the second hypothetical, the ALJ added that the individual would be able to perform
15 simple, routine tasks with minimal changes in job duties and job setting. *Id.* The ALJ also added that
16 the hypothetical individual should avoid exposure to concentrated dusts, gasses, odors, fumes, and
17 poor ventilation. *Id.* The VE testified that for this hypothetical, she would remove the Bench
18 Assembler position, and add in its place Counter Attendant (DOT 311.477-014; light; SVP 2; 180,000
19 jobs). *Id.* She confirmed that the Furniture Rental Clerk and Routing Clerk positions would remain
20 for the individual. *Id.*

21  The ALJ then asked how many absences from work due to symptoms and treatment are
22 tolerated in the national economy. AR 67-68. The VE responded that most employers allow up to one
23 absence per month on an ongoing basis, but that more than one absence per month would preclude
24 employment. AR 68.

25  Plaintiff's attorney then asked the VE to assume the individual from the first hypothetical and
26 to add that the individual would need to change position every 15 minutes. *Id.* The VE stated that the
27 Furniture Rental Clerk position would remain. *Id.* Plaintiff's attorney then asked about the effect on
28 potential jobs if the individual had to go from sitting to standing to sitting to standing and back every

6

15 minutes and the VE testified that "at that frequency… that would be preclusive." *Id.* For a second hypothetical, Plaintiff's attorney asked that the VE consider a hypothetical individual who would not respond appropriately to coworkers, the public, or supervisors on an occasional basis. AR 69. Specifically, the hypothetical individual would be argumentative, irritable, inappropriate, and snap at others. *Id.* The VE testified that if this was an ongoing situation, that would not be tolerated by employers. *Id*

The VE testified that her testimony was consistent with the Dictionary of Occupational Titles and Selected Characteristics of Occupations. *Id.* She further testified that her testimony regarding absenteeism was based on her job placement experience as the DOT does not specifically address absenteeism or sitting and standing requirements. *Id.*

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 14-37. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 12, 2019, the protected filing date. AR 20. The ALJ identified the following severe impairments: Cervical Degenerative Disc Disease, Lumbar Degenerative Disc Disease and Right Ankle post-traumatic changes from a history of an Achilles Tendon Rupture." *Id.* The ALJ additionally identified Plaintiff's hypertension, prediabetes or Type II diabetes mellitus, obstructive sleep apnea, shortness of breath, asthma or chronic obstructive pulmonary disease, obesity, major depressive disorder, anxiety, bilateral problems, and dysphagia but noted that they were well-controlled and/or did not result in functional limitations. AR 20-24. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 24-25.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with limitations to: frequently climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; frequently balancing; and frequently stooping,

kneeling, crouching, or crawling.  AR 25-32.  With this RFC, and considering Plaintiff's age, education, and work experience, the ALJ found that Plaintiff has no past relevant work but could perform work in the national economy, including positions such as: Furniture Rental Clerk (DOT 295.357-018, 58,289 such jobs in the national economy); Bench Assembler (DOT 699.685-026, 571,000 such jobs in the national economy); and Routing Clerk (DOT 222.687-022, 97,733 such jobs in the national economy).  AR 32-33.  The ALJ therefore concluded that Plaintiff had not been under a disability from the protective filing date of March 12, 2019.  AR 33.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or

8

her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## **DISCUSSION**[2]

Plaintiff contends that the ALJ erred by finding that Plaintiff's anxiety and depression were non-severe impairments at Step Two. (Doc. 17 at 12.) Plaintiff further contends that the ALJ's RFC did not include limitations related to Plaintiff's anxiety and depression. (*Id.*) Finally, Plaintiff argues that the Appeals Council failed to consider the additional medical source statement Plaintiff submitted from the Sequoia Health and Wellness Centers. (*Id.* at 15-17.)

**A. Step Two and RFC**

Plaintiff first argues that the ALJ erroneously concluded that his anxiety and depression were non-severe at Step Two of the sequential evaluation. (Doc. 17 at 12.) Plaintiff further contends that the ALJ's error in Step Two meant that the RFC did not include limitations related to Plaintiff's anxiety and depression. (*Id.*)

At step two of the five-step sequential evaluation, the ALJ is required to determine whether a plaintiff has a "severe" medical impairment or combination of impairments. 20 C.F.R. § (a)-(c). An impairment, or combination of impairments, can be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *See* SSR 85–28, 1985 WL 56856 (Jan. 1, 1985); *see also Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85–28). "The mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir.1993). A claimant bears the burden of proving that an impairment is disabling. *Id.* (citation omitted).

"Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017), citing *Bowen v. Yuckert*, 482 U.S. 137, 146–47 (1987).

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

"It is not meant to identify the impairments that should be taken into account when determining the RFC . . . . The RFC . . . *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* (emphasis in original).  Any error in failing to include an impairment at step two is harmless if the ALJ considered any limitations imposed by the impairment in the RFC determination at step four.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless.").

Here, at step two of the sequential evaluation, the ALJ addressed Plaintiff's depression and anxiety:

> The claimant's medically determinable mental impairments of major depressive disorder and anxiety do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere. In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1)…

AR 21.  The ALJ then summarized the mental examination findings and relevant record related to Plaintiff's depression and anxiety.  AR 21-24.  Following this review, the ALJ examined the record through the lens of the four functional areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  AR 23-24.  In each of these areas, the ALJ found either no limitation or mild limitation and concluded that, "[b]ecause the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere (20 CFR 416.920a(d)(1))."  AR 24.

First, the ALJ evaluated Plaintiff's mental impairments using the technique outlined in the Code of Federal Regulations.  20 C.F.R. § 416.920a.  The technique "identified four broad functional areas in which [the Social Security Administration] will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain

pace; and adapt or manage oneself." 20 C.F.R. § 416.920a(c)(3). If "[the Social Security Administration] rate the degrees of your limitation as "none" or "mild," [the Administration] will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 416.920a(d)(1). The ALJ properly followed the technique outlined by reviewing the record regarding Plaintiff's depression and anxiety and then applying the facts from the record to each of the functional areas. AR 23-24.

In the functional area of understanding, remembering, or applying information, the ALJ found no limitation where both the initial State Disability Determination Agency reviewer and reconsideration reviewer concluded that Plaintiff had no limitation and "the mental status examinations tend to be unremarkable." AR 23; 210 ("follows directions pretty good"); 212-213 (Agency Reviewer noting "Understand, remember, or apply information: None"); 229 (Agency Reviewer noting "Understand, remember or apply information: None"); 793 ("Grossly intact attention, Memory – recent/remote judged adequate by interview"); 799 ("Grossly intact attention, Memory - recent/remote judged adequate by interview"); 805 ("Cognition/Attention/Memory/Concentration: Alert and oriented x4"); 811 ("Cognition/Attention/Memory/Concentration: Alert and oriented x4"); 813 ("Cognition/Attention/Memory/Concentration: Alert and oriented x4, Grossly intact attention, Memory - recent/remote judged adequate by interview"); 819 ("Cognition/Attention/Memory/Concentration: Alert and oriented x4, Grossly intact attention, Memory - recent/remote judged adequate by interview"); 942-943 ("Cognition/Attention/Memory/Concentration : Grossly intact attention, Memory - recent/remote judged adequate by interview").

In the functional area of interacting with others, the ALJ found Plaintiff had a mild limitation where the State Disability Determination Agency reviewers found mild limitation and interviewers noted that Plaintiff was able to establish rapport, maintain appropriate eye contact and demeanor, and rarely appeared restless or in a bad mood. AR 23; *See* AR 210 ("spends time w/ others, doesn't go out, irritable, argues…"); 213 (Agency Reviewer noting "Interact with others: Mild"), 229 (Agency Reviewer noting "Interact with others: Mild"); 793-794 (mental status examination notes appropriate

1  appearance, normal behavior, good mood, full affect, logical and goal directed thought processes);
2  798-799 (mental status examination notes appropriate appearance, normal behavior, stressed mood,
3  full affect, logical and goal directed thought processes); 942-943 (mental status examination notes
4  appropriate appearance, normal behavior, "okay" mood, full affect, logical and goal directed thought
5  processes).

6        Similarly, in the functional area of concentrating, persisting, or maintaining pace, the ALJ also
7  found Plaintiff had a mild limitation.  AR 23.  The ALJ stated that this finding was supported by the
8  agency reviewer's conclusions and by: Plaintiff performing simple math calculations when asked,
9  Plaintiff remaining on task when interviewed, Plaintiff maintaining conversational exchanges, and
10 Plaintiff not meeting the diagnostic criteria for attention deficit hyperactivity disorder or requiring
11 medication to concentrate.  AR 23-24; *See* AR 213 (Agency Reviewer noting "Concentrate, persist, or
12 maintain pace: Mild"); 229 (Agency Reviewer noting "Concentrate, persist, or maintain pace: Mild");
13 793-794 (mental status examination notes logical and goal-directed thought process/associations,
14 grossly intact attention, good insight, and good judgment); 798-799 (mental status examination notes
15 logical and goal-directed thought process/associations, grossly intact attention, fair insight and
16 judgment); 942-943 (mental status examination notes logical and goal-directed thought
17 process/associations, grossly intact attention, fair insight and judgment).

18       In the fourth functional area of adapting or maintaining oneself, the ALJ found no limitation
19 where the record showed Plaintiff generally maintained appropriate hygiene and attire, managed
20 difficult situations such as working through insurance issues, and did not have any conflicts during the
21 application process or seeking healthcare.  AR 24; *See* AR 213 (Agency Reviewer noting "Adapt or
22 manage oneself: None"); 229 (Agency Reviewer noting "Adapt or manage oneself: None"); 583 ("The
23 client was casually dressed and somewhat malodorous."); 798 ("appropriately dressed and groomed"),
24 813 ("appropriately dressed and groomed"); 819 ("Appropriately dressed and groomed"); 942
25 ("appropriately dressed and groomed").  The ALJ also noted that the "evidence does not otherwise
26 indicate that there is more than a minimal limitation in the claimant's ability to do basic work
27 activities," and so appropriately followed the process outlined by the Social Security Administration to
28 find Plaintiff's impairments nonsevere.  *See* 20 C.F.R. § 416.920a(d)(1).

Second, the ALJ's Step Two analysis of Plaintiff's depression and anxiety pointed to evidence that Plaintiff's depression and anxiety was controlled through therapy and medication including Zoloft, Wellbutrin, Attarax, and Hydroxyzine.  AR 21-23.  Substantial evidence supports an ALJ's finding that an impairment is not severe when medical records show that the claimant's impairment has been controlled by treatment.  See *Huff v. Astrue*, 275 F. App'x 713, 717 (9th Cir. 2008) (finding ALJ did not err in finding claimant's depression to be non-severe because the ALJ reasonably relied on physician's finding that claimant's depression had improved with treatment); *Kenneth K. v. Berryhill*, 2018 WL 6991256, at *4 (D. Or. Dec. 19, 2018) (finding ALJ's determination that claimant's diabetes was not a severe impairment was supported by substantial evidence because medical records showed her diabetes was "controlled"), report and recommendation adopted by, 2019 WL 165700 (D. Or. Jan. 10, 2019).

In this case, Plaintiff utilized therapy and medications including Zoloft, Wellbutrin, Attarax, and Trazodone.  *See* AR 796-797 (Therapy service and CBT recommended, emotional support animal letter provided to Plaintiff, noting Zoloft and Wellbutrin dosages increased on last visit); 804-805 (Plaintiff reported return of depressive symptoms but "reports wellbutrin helped slightly;" Plaintiff prescribed Trazodone to help with sleep issues); 813-814 (Zoloft increased and Attarax prescribed following increased anxious mood); 940-941 (Continuing Zoloft, Wellbutrin, and Trazodone; therapy services recommended to help with stress reduction, coping skills, and frustration tolerance).  Though Plaintiff's depression and anxiety symptoms varied, the record showed that he was responding well to the treatment provided.  *See* AR 688 (Plaintiff reports "less difficulty concentrating…slightly more motivation and energy… sleep has improved since starting the medications… no longer getting upset as quickly and feels more in control."); 791-792 (Plaintiff "reports improvement in his mood, irritability, and anxiety since last visit" at which his dosages of Zoloft and Wellbutrin were increased and Trazodone was added to address his insomnia; Plaintiff additionally attributed improvements to adopting an emotional support cat); 810 ("Reports partial improvement of depressive symptoms from increasing zoloft, endorses some loss of interest, irritability, sadness, low energy, difficulty concentrating. Denies hopelessness or SI. Reports anxiety is intermittent, but has not needed to take hydroxyzine in months now."); 940-942 (Plaintiff "indicates that his mood, appetite, and anxiety are

well controlled, which he attributes to his emotional support cat"; no change in prescriptions of Zoloft, Wellbutrin, and Trazodone). Additionally, mental status examinations typically revealed unremarkable findings. AR 697-698; 793-794; 798-799; 811; 813 (generally normal findings though slurred speech and anxious mood); 819 (generally normal findings though slurred speech and anxious mood); 942-943. Accordingly, the ALJ appropriately assessed medical records to determine that Plaintiff's anxiety and depression had been controlled by treatment and were therefore non-severe.

Plaintiff argues that the ALJ improperly "cherry picked" from medical evidence to support the Step Two finding that Plaintiff's anxiety and depression were nonsevere. (Doc. 17 at 15.) The Ninth Circuit has noted that it is "improper for the ALJ to discount [a claimant's] testimony by 'cherry pick[ing]' the absence of certain symptoms from the report." *Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017). The Ninth Circuit further cautioned that, "[w]hile ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must in fact constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard." *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014). Here, the ALJ appears to have examined and cited the relevant treatment notes and record in evaluating Plaintiff's anxiety and depression rather than choosing unrepresentative data points. *See* AR 21-24; 688; 697-698; 791-794; 798-799; 804-805; 810-811; 813-814; 940-942. Accordingly, the ALJ properly evaluated Plaintiff's depression and anxiety at Step Two.

Even assuming *arguendo* that the ALJ failed to find certain, unspecified cardiac impairment(s) severe at step two, any such error is harmless because the ALJ considered any limitations imposed by Plaintiff's anxiety and depression at step four of the sequential evaluation. *Lewis*, 498 F.3d at 911. At Step Four, the ALJ thoroughly considered the symptoms and limitations imposed by Plaintiff's depression and anxiety and found them minor:

> The claimant's testimony provided a vivid description of the symptoms of his depression and anxiety. He asserted the medications were not working. This is contrary to the mental health records where he showed improvement when started on medications and improvement when his medications were adjusted. In his testimony, he described how he was being referred to a behavioral therapist. The mental health records indicate the plan was to coordinate psychotropic medications with

14

>psychotherapy and counseling, plus lifestyle modifications. He had not taken the next step towards any mental health treatment beyond the medications he stated were not working. As directed in Social Security Ruling 16-3p, the undersigned considered possible reasons why he was not obtaining treatment consistent with his complaints. All indications are that he understands what treatments are available to provide symptom relief and he requires consistent treatment. There are no indications that he has been advised that he has exhausted the available treatment options. He has medical insurance and access issues have more to do with finding providers who accept his insurance. There is no indication he had problems with treatment side effects… Although his subjective complaints of pain and discomfort are not disregarded because they are not supported by objective medical evidence, his subjective complaints are not very persuasive because the alleged level of impairment is inconsistent with the preponderance of the evidence as a whole.

AR 31; *See* AR 688; 697-698; 791-794; 798-799; 804-805; 810-811; 813-814; 940-942.

Based on the foregoing, the Court finds that the ALJ did not commit reversible error at Step Two of the sequential evaluation or in determining Plaintiff's RFC.

### B. Appeals Council Evidence

Plaintiff next contends that the Appeals Council committed harmful error by failing to consider the additional medical source statement Plaintiff submitted by Dr. Choudhury of the Sequoia Health and Wellness Centers. (Doc. 17 at 15-17.) Defendant responds that Dr. Choudhury's opinion did not have a reasonable probability of changing the outcome of the decision, the ALJ's opinion was supported by substantial evidence, Dr. Choudhury's opinion does not contradict the ALJ's decision, Dr. Choudhury's opinion does not sufficiently support Plaintiff's allegations of pain, and Dr. Choudhury's opinions were contradicted by the medical record. (Doc. 18 at 13-16.)

The Ninth Circuit has "routinely considered evidence submitted for the first time to the Appeals Council to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("we hold that when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial

evidence."); see also *Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n.2 (9th Cir. 2007) (noting that when Appeals Council considers new evidence in denying a claimant's request for review, the reviewing court considers "both the ALJ's decision and the additional evidence submitted to the Appeals Council").

The Regulations govern when the Appeals Council is obligated to review additional evidence submitted after the ALJ issues a decision. *See* 20 C.F.R. § 416.1470 (applicable to applications for SSI benefits) (eff. Dec. 16, 2020). Pursuant to the regulations in effect at the time of Plaintiff's appeal, the Appeals Council "will review a case if ... the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5).

"It is the claimant's burden to establish the evidence should have been considered by the Appeals Council under the Regulations." *Silva v. Comm'r of Soc. Sec.*, No. 1:21-cv-01038-SAB, 2023 WL 316535, at *14 (E.D. Cal. Jan. 19, 2023) (citing *Hawks v. Berryhill*, No. 1:17CV1021, 2018 WL 6728037 at *4 (M.D.N.C. Dec. 21, 2018)). This burden includes establishing the evidence is new, material, and there is a reasonable probability that the additional evidence would change the outcome of the decision, it relates to the period on or before the date of the hearing decision, and good cause exists for the late submission. 20 C.F.R. § 416.1470(a)–(b).

Here, Plaintiff submitted a medical source statement by Dr. Ivana Choudhury from Sequoia Health and Wellness Centers dated August 17, 2021. AR 2; 7-8. Dr. Choudhury marked that Plaintiff was limited to "Sedentary" work in lifting and carrying, and could use his left and right hands and arms for simple grasping, fine manipulation, push/pull, reaching, writing, or keyboarding approximately 50 to 80% of the day. AR 7. Dr. Choudhury further marked that Plaintiff was limited to "Sedentary" work in the standing, sitting, walking category, which means that he could stand or walk "combined no more than about 2 hours, and sitting approximately 6 hours of an 8-hour workday." *Id.* Dr. Choudhury further noted that Plaintiff must rest away from his workstation for approximately 15 minutes per day. *Id.* Dr. Choudhury also marked that Plaintiff could push/pull leg and foot controls for approximately 20% of the day and must elevate his legs for approximately 20%

16

of an 8-hour day. *Id.* She also marked that Plaintiff could bend 0% of the day, stoop 10% of the day, and balance 30% of the day. *Id.* She further marked that she believed Plaintiff's complaints of pain and that there were laboratory or clinical findings documenting a condition which could reasonably be expected to give rise to this degree of pain. AR 8. She wrote that degenerative joint disease could give rise to the pain, as evidenced by "MRI findings." *Id.* She marked that the severity of the pain would cause Plaintiff to be: mentally off-task for 5% of the day, prevented from focusing on all but one-step and two-step tasks for 10% of the day, and prevented from focusing on even one-step and two-step tasks for 5% of the day. *Id.* The Appeals Council acknowledged this evidence but determined that it did not "show a reasonable probability that it would change the outcome of the decision." AR 2.

   Plaintiff argues that "evidence is material because it creates a reasonable possibility that the outcome of the case would be different." (Doc. 17 at 16.) Specifically, Plaintiff appears to argue that a different outcome was reasonably probable because Dr. Choudhury's opinion support Plaintiff's complaints of increased pain. (*Id.* at 16-17.) However, Plaintiff's argument is conclusory and does not demonstrate how the additional evidence would create a reasonable probability that the outcome would change. In his brief, Plaintiff broadly states that "[c]hronic pain leads to complications such as decreased quality of life, depression, and anxiety; complications the ALJ improperly found were non-severe" and notes that Dr. Choudhury's statement "incorporates Mr. Albaugh's complaints into a single functional profile." *Id.* These assertions do not cite to evidence in the record beyond a brief reference to Plaintiff's hearing testimony, and do not allow the Court to conclude there is a reasonable probability that the outcome of the case would be different.

   Furthermore, Plaintiff does not explain how Dr. Choudhury's opined limitations directly support Plaintiff's complaints of disabling pain to produce a different outcome in the case. Instead, Dr. Choudhury's opinion appears to conflict with Plaintiff's symptoms testimony. For instance, Dr. Choudhury's estimated amount of time Plaintiff would be off task is much shorter than Plaintiff's "24/7" assertion. *See* AR 8 (Dr. Choudhury opined that the severity of the pain would cause Plaintiff to be mentally off-task for 5% of the day); 58-59 (Plaintiff notes that the pain is "distracting" "24/7" and interferes with his memory, concentration, and ability to complete tasks). Plaintiff's claimed

17

duration of time needed between breaks due to pain also differs from Dr. Choudhury's opinion. *See* AR 7 (Dr. Choudhury marked that Plaintiff could sit for approximately six hours in an eight-hour workday and would need a 15-minute rest away from his workstation); 59-60 (Plaintiff testified that he could not sit for more than 10-15 minutes at a time before needing to switch positions). Additionally, Dr. Choudhury's opinion does not cite to supporting evidence beyond a reference to "MRI findings." AR 8.  To the extent that the MRI findings cited by Dr. Choudhury are the same as those cited and discussed in the ALJ decision, this also suggests that Dr. Choudhury's opinion would not have changed the outcome of the case. *See* AR 25-30 (examining MRI findings).  Because Plaintiff does not satisfy his burden of showing that Dr. Choudhury's statement was "new, material, and relates to the period on or before the date of the hearing decision" and that there was "a reasonable probability that the additional evidence would change the outcome of the decision," he fails to demonstrate the Appeals Council erred. *See* 20 C.F.R. §§ 416.1470(a)(5); 416.1570.

The Court therefore concludes that the ALJ and the Appeals Council did not err in their analysis, and the ALJ's disability determination was supported by substantial evidence.

## CONCLUSION

For the reasons stated, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's motion for summary judgment and appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Travis Scott Albaugh.

IT IS SO ORDERED.

Dated: **June 7, 2023**        /s/ *Barbara A. McAuliffe*
                               UNITED STATES MAGISTRATE JUDGE